UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMAL WARREN,

                    Plaintiff,

v.                                              3:15-CV-1185
                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 East Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                     TOMASINA DIGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 13.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Jamal Warren

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 10, 11.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on August 26, 1993.  (T. 207.)  He completed high school with

an individual education program ("IEP") diploma.  (T. 324.)  Generally, Plaintiff's alleged

disability consists of mental illness, learning disability, right leg injury, poor vision, and

speech impairment.  (T. 233.)  His alleged disability onset date is November 20, 2003.

(T. 92.)  He has no past relevant work.

### B.    Procedural History

On January 7, 2013, Plaintiff applied for child's insurance benefits under Title II,

and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.

(T. 92, 200.)  Plaintiff's applications were initially denied, after which he timely requested

a hearing before an Administrative Law Judge ("the ALJ").  On October 23, 2014,

Plaintiff appeared before the ALJ, John P. Ramos.  (T. 32-61.)  On December 12, 2014,

ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social

Security Act.  (T. 8-31.)  On September 14, 2015, the Appeals Council ("AC") denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 13-26.)  First, the ALJ found that Plaintiff had not yet attained

age 22 as of April 1, 2012 and Plaintiff had not engaged in substantial gainful activity since April 1, 2012. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of intellectual disability and Blount's disease status pose bilateral osteotomy. (T. 14.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-18.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 18.)[1] Specifically, the ALJ found that Plaintiff could lift and/or carry ten pounds occasionally, stand and/or walk for two hours in an eight-hour day and sit for six hours in an eight-hour day. (*Id.*) The ALJ determined that Plaintiff could understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, handle reasonable levels of simple work-related stress in that he could make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-25.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff makes essentially three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to account for Plaintiff's cognitive impairments in his RFC determination. (Dkt. No. 10 at 6-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ failed to find that Plaintiff's condition met Listing 12.05C. (*Id.* at 12-16.) Third, and lastly, Plaintiff argues that the ALJ failed to consult with a vocational expert ("VE"). (*Id.* at 16-18.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly considered and assessed Plaintiff's cognitive limitations. (Dkt. No. 11 at 6-10 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found that Plaintiff's mental impairments did not meet section 12.05C of the Listings. (*Id.* at 11-12.) Third, and lastly, Defendant argues that the ALJ properly found that Plaintiff was not disabled as step five of the sequential evaluation process. (*Id.* at 13-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A.    The ALJ's Step Three Determination

If an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at §§ 404.1525(a), 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, then the ALJ should generally find the plaintiff disabled without

considering the plaintiff's age, education, and work experience.  *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).  Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four.  *See id.* at §§ 404.1520(e), 416920(e).

At step three the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of a Listing.  (T. 15.)  The ALJ determined that Plaintiff's mental impairment did not meet the criteria of Listing 12.05C.  (*Id.*)  The ALJ also reviewed the criteria of Listing 12.05D.  (T. 16-17.) Listing 12.05 addresses intellectual disability; and claimants are per se disabled if the requirements of paragraphs A, B, C, or D are met. *see* 20 C.F.R. §§ 404.1525(a), 416.925(a).

Listing 12.05 requires, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05.  The requirements of paragraph C

are met if the plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* Ultimately, the ALJ determined that Plaintiff did not meet Listing 12.05C because he did not have significant deficits in adaptive functioning. (T. 16.)

Plaintiff argues that the ALJ erred in his step three determination because Plaintiff has significantly subaverage general intellectual functioning and Plaintiff has deficits in adaptive functioning. (Dkt. No. 10 at 12-16 [Pl.'s Mem. of Law].)

The record contained numerous intellectual testing, including IQ testing. In 1999, Plaintiff completed the Slossom Full Range IQ test, the Kaufman Brief Intelligence test, and the Stanford Binet Intelligence Scale - Fourth Edition ("SB-IV"). (T. 337.) The Slossom test indicated a verbal score of 82 (low average), an abstract score of 70 (borderline), a quantitative score of 90 (average), a memory score of 76 (borderline), a performance score of 74 (borderline), and a full range score of 77 (borderline). (T. 337.) The Kaufman test indicated a vocabulary score of 82 (low average), a matrices score of 94 (average) and a composite score of 87 (low average). (*Id.*) The Stanford test indicated a verbal reasoning score of 80 (low average), abstract/visual reasoning score of 68 (extremely low), a quantitative reasoning score of 72 (borderline), a short term memory score of 84 (low average), and a partial test composite of 71 (borderline). (*Id.*)

In 2002, Plaintiff again completed intelligence testing. He completed the Wechsler Intelligence Scale for Children - Third Edition (WISC-III) and received a performance IQ score of 62 (extremely low). (T. 337) He completed a Wechsler Individual Achievement Test - Second Edition (WIAT-II). (T. 338.) The WIAT-II

indicated a word reading score of 66 (extremely low), a pseudo word decoding score of 66 (extremely low), a reading comprehension score of 62 (extremely low), a numerical operations score of 81 (low average), a math reasoning score of 62 (extremely low), a spelling score of 79 (borderline), and a written expression score of 72 (borderline).  (*Id.*)

In 2005, Plaintiff completed more intelligence testing.  He completed the Wechsler Abbreviated Scale of Intelligence (WASI), which indicated a full IQ of 58 (extremely low).  (T. 338.)  He completed the Kaufman Test of Educational Achievement - Brief (KTEA) and received a score of 63 (extremely low) in reading, a score of 49 (extremely low) in math, and a score of 63 (extremely low) in spelling.  (*Id.*)  Plaintiff was given the Adaptive Behavior Assessment System - Second Education (ABAS-II). Results of the ASAB-II, indicated a conceptual composite score of 96 (average), practical composite score of 105 (average), social composite score of 119 (high average), and a global adaptive composite score of 105 (average).  (*Id.*)

In April of 2011, at age 17 years and 9 months, Plaintiff was administered the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV).  (T. 336, 339.)  The WAIS-IV results indicated a verbal comprehension score of 68 (extremely low), perceptual reasoning score of 58 (extremely low), a working memory score of 74 (borderline), a processing speed score of 79 (borderline), and a full scale IQ score of 63 (extremely low).  (T. 339.)  Notations indicated that Plaintiff was functioning at a similar cognitive level "as before."  (T. 340.)  Notations also indicated that Plaintiff's WAIS-IV scores signified that he had "great difficulty in reasoning using verbal information. . . and in doing more visual-spatial, hand-on tasks."  (*Id.*)  Plaintiff was also administered the Woodcock Johnson Tests of Achievement - Third Edition and scored "extremely low" in

all areas indicating "significant weakness in all of the academic areas."  (T. 341.)
Plaintiff scored "extremely low" in all areas of the Adaptive Behavior Assessment
System - Second Edition (ABAS-II).  (T. 342.)

Although Plaintiff's IQ scores fall within the requirements of Listing 12.05C, the
ALJ determined that Plaintiff did not meet the Listing because he did not have
"significant deficits in adaptive functioning."  (T. 16.)  Adaptive functioning refers to an
individual's "[ ]ability to cope with the challenges of ordinary everyday life."  *Talavera v.
Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy v. Astrue,* 497 F.3d 708, 710
(7th Cir. 2007)).  Accordingly, courts have held that if a plaintiff is able to satisfactorily
navigate activities such as "liv[ing] on [one's] own," "tak[ing] care of ... children ... without
help ... sufficiently well that they have not been adjudged neglected," "pay[ing] bills," and
"avoid[ing] eviction," the plaintiff does not suffer from deficits in adaptive functioning.
*Talavera,* 697 F.3d at 153.  This District has previously looked to factors such as living
on one's own, independently caring for children, cooking, paying bills, communication
abilities, and daily living skills as indications of deficits in adaptive functioning.
*Stephens v. Colvin*, No. 3:15-CV-00622, 2016 WL 4094885, at *6 (N.D.N.Y. Aug. 2,
2016) (citing *Barton v. Astrue*, No. 3:08–CV–0810, 2009 WL 5067526, at *7 (N.D.N.Y.
Dec. 16, 2009).

In making his determination, the ALJ relied on the Diagnostic and Statistical
Manual of Mental Disorders, 5th Edition ("DSM-V") for guidance.  (T. 16.)  The DSM-V
divides adaptive functioning into three domains: conceptual, social, and practical.  (T.
16.)  The ALJ took into consideration Plaintiff's test scores from 2008 in which he
scored in the average range for conceptual, practical, and social adaptive behavior, and

test scores from 2011 in which he received extremely low scores for conceptual, practical, and social adaptive behavior. (T. 16, *referring to* T. 338, 342.) The ALJ appears to question the accuracy of the 2011 scores, noting that Plaintiff was anticipating his redetermination and that Plaintiff's teacher commented that he was able to accomplish academic, community and social skills, but needed to be motivated to do so. (T. 16.) The ALJ also noted that educational records indicated Plaintiff could do simple math problems involving money and he was very social. (*Id.*) The ALJ took into consideration Plaintiff's activities of daily living, such as his ability to cook, clean, do laundry, shop, and care for his own personal hygiene. (*Id.*) Finally, the ALJ noted that Plaintiff was able to work as a cab driver. (*Id.*)

Plaintiff specifically argues that the ALJ erred in his conclusion that Plaintiff has a high school education, because Plaintiff did not receive a regular education diploma, but instead an IEP diploma. (Dkt. No. 10 at 13-14 [Pl.'s Mem. of Law].) The ALJ noted at step five, not step three, that Plaintiff's education level was "at least high school." (T. 24); *see* 20 C.F.R. §§ 404.1564, 416.964. The ALJ did not discuss Plaintiff's type or level of education, outside of testing, at step three of his determination. (T. 15-18.) Elsewhere in his determination the ALJ noted that although Plaintiff was eligible for special education and classified as a child with an intellectual disability that did not necessarily mean that he was disabled under the adult rules of disability. (T. 21.)

To be sure, attendance in special education classes, and an education pursuant to an IEP, have been construed as factors indicative of deficits in adaptive functioning. *Lyons v. Colvin*, No. 7:13-CV-00614, 2014 WL 4826789, at *9 (N.D.N.Y. Sept. 29, 2014). Here, although Plaintiff received an IEP diploma, the ALJ relied on other

significant evidence in the record in making his determination that Plaintiff did not have deficits in adaptive functioning. As noted by the ALJ, Plaintiff was able to do simple problem solving involving money, he was social, he was able to perform activities of daily living independently, and he was able to drive. (T. 16.)

Indeed, in his Function Report, Plaintiff indicated that he was able to shop for food, pay bills, count change, and play games. (T. 243.) Plaintiff informed the consultative examiner that he cooks, cleans, does laundry, shops once a month, showers and dresses himself daily, and listens to the radio and plays sports. (T. 365.)[2] He indicated that he could and could not handle a savings account, but that his ability to handle money has not changed due to his impairments. (T. 243.) Although Plaintiff indicated that he could not follow spoken or written instruction (T. 246), school records indicated that he was capable of being focused and could do simple problem solving involving money, could read and work with graphs, and could use a calculator with ease. (T. 344-345.)

Although Plaintiff did not work at the level of substantial gainful employment, he was employed after high school and reported that he ceased working due to conditions other than his intellectual impairment. Plaintiff testified that he ceased working as a cab driver because of the "drunks and idiots," he ceased working at a restaurant because he could not understand his boss's heavy accent, and he ceased working as a cart returner because he had surgery on his leg. (T. 39, 54.) He further testified that he has a driver's license, but does not drive because he does not own a car. (T. 42.) Therefore, despite Plaintiff's enrollment in an IEP program, substantial evidence in the record

---

[2] Plaintiff informed another consultative examiner that he does not do laundry, because his fiancé does it. (T. 385.)

supported the ALJ's determination that Plaintiff did not have deficits in adaptive functioning. *See Perry v. Astrue*, No. 3:11-CV-1122, 2013 WL 474849, at *3 (N.D.N.Y. Feb. 6, 2013) (ALJ properly determined Plaintiff with an IEP diploma did not have deficits of adaptive functioning were the evidence indicated she could perform activities of daily living and the basic mental demands of unskilled work).

Plaintiff cites to evidence in the record which he maintains provides substantial evidence to support a finding of deficits in adaptive functioning. (Dkt. No. 10 at 15-16 [Pl.'s Mem. of Law].) However under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Therefore, substantial evidence supported the ALJ's step three determination that Plaintiff did not meet Listing 12.05C because he did not have the requisite deficits in adaptive functioning and it is recommended that the ALJ's step three determination be upheld.

### B.    The ALJ's RFC Determination

Plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing Plaintiff's RFC, the ALJ must consider "all of the relevant medical and other evidence." *Id.* at §§ 404.1545(a)(3)-(4), 416.945(a)(3)-(4). An RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Id.* at §§ 404.1545(a)(2), 416.945(a)(2). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.; Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

Plaintiff argues that in formulating his RFC determination the ALJ erred because he failed to account for specific limitation imposed by consultative examiner, Sara Long, Ph.D. and the ALJ improperly assessed Plaintiff's cognitive functioning. (Dkt No. 10 at 6-12 [Pl.'s Mem. of Law].) Plaintiff does not argue that the ALJ erred in his physical RFC assessment.

On April 2, 2013, Dr. Long performed a psychiatric evaluation. (T. 380-383.) During her examination she observed that Plaintiff was cooperative with good social skills. (T. 381.) Dr. Long noted that Plaintiff was neat and well-groomed with appropriate eye contact. (*Id.*) On examination, Plaintiff occasionally stuttered and had to repeat himself; otherwise, his speech was clear with adequate expressive and receptive language. (T. 381.) Dr. Long observed that Plaintiff's thought processes were coherent, goal directed, with no indication of sensory or thought disorder. (*Id.*) During examination, Plaintiff displayed a full range of appropriate affect in speech and thought content. (*Id.*) Dr. Long noted that Plaintiff could not subtract three from 20, but could subtract three from 10. (*Id.*) Dr. Long noted that Plaintiff repeated three objects

immediately and after five minutes; he repeated digits forward to four digits and backward to two. (*Id.*)

Plaintiff reported that he was able to take care of his own grooming, he did "some" cooking, cleaning, and laundry. (T. 382.) He further reported that he socialized and family relationships were good. (*Id.*)

Regarding Plaintiff's cognitive functioning, Dr. Long stated that Plaintiff appeared to be functioning on a borderline to extremely low intellectual level (T. 382); however, his cognitive factors were not fully evaluated and prognosis might be re-evaluated after vocational counseling (T. 383).

In a medical source statement Dr. Long opined that Plaintiff was able to "follow and understand simple directions and instructions and to perform simple tasks independently." (T. 382.) She further opined that Plaintiff could maintain attention and concentration and was able to maintain a regular schedule. (*Id.*) Dr. Long stated that Plaintiff was able to relate adequately with others and was capable of adequate stress management. (*Id.*) She opined that Plaintiff appeared to have moderate to marked limitations in his ability to learn new tasks, perform complex tasks, and make appropriate decisions. (*Id.*)

Plaintiff argues that the ALJ erred in formulating his RFC determination because he afforded "great weight" to Dr. Long's opinion; however, he omitted her opinion that Plaintiff had moderate to marked limitations in his ability to learn new tasks and make appropriate decisions, which would preclude all work. (Dkt. No. 10 at 6-7 [Pl.'s Mem. of Law].) Here, the ALJ's mental RFC determination was supported by substantial evidence in the record.

In formulating his RFC, the ALJ afforded Dr. Long's opinion "great weight." (T. 23.) Plaintiff maintains that the ALJ erred in failing to not only account for all of Dr. Long's opinion, but also for failing to explain how his RFC was consistent with Dr. Long's opinion. (Dkt. No. 10 at 6-7 [Pl.'s Mem. of Law].) First, An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Second, it is "not require[d] that ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *see also Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981) (rejecting the proposition that the hearing officer must explicitly reconcile "every shred" of conflicting testimony). "In our review, we defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Despite her opinion that Plaintiff had moderate to marked limitations in his ability to learn new tasks and make work-related decisions, Dr. Long opined Plaintiff retained the ability to understand and follow simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and maintain a regular

schedule. (T. 382.) *See Kifayeh v. Colvin*, 99 F. Supp. 3d 369, 378 (E.D.N.Y. 2015) (although consultative examiner opined that plaintiff could not learn new tasks, the doctor ultimately opined that plaintiff could perform simple tasks and make appropriate decisions and plaintiff reported he was able to self-groom and go to mosque which supported ALJ's mental RFC determination that plaintiff could perform simple, routine work); *see Patterson v. Colvin*, No. 14-CV-6224, 2015 WL 5036934, at *11 (W.D.N.Y. Aug. 26, 2015) ("Similarly, although [consultative examiner] stated that [Plaintiff's] ability to learn new tasks may be negatively affected by her reading difficulties, [the consultative examiner] also determined that, despite those limitations, [Plaintiff] retained the ability to understand and follow simple directions, perform simple tasks, maintain attention and concentration, maintain a schedule, make appropriate decisions, relate adequately with others, and adequately deal with stress."). Therefore, Dr. Long ultimately opined that Plaintiff could perform simple routine work despite his limitations. In addition, other medical evidence and testimony in the record supported the ALJ's mental RFC determination.

Other evidence in the record supported the ALJ's determination that Plaintiff could essentially perform simple, routine, unskilled work and specifically that Plaintiff was capable of learning new tasks. (T. 18.) In formulating Plaintiff's mental RFC the ALJ relied primarily on the opinion of Dr. Long; however, he also relied on the opinion of the non-examining State agency medical consultant, Edward Kamin, Ph.D. (T. 24.)

Dr. Kamin reviewed Plaintiff's record, including Dr. Long's examination. (T. 62-91.) Dr. Kamin opined that Plaintiff was not significantly limited in his ability to: carry out very short and simple instructions; preform activities within a schedule; maintain regular

attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (T. 67-69.) Dr. Kamin's opinion supported the ALJ's determination that Plaintiff could perform the basic mental demands of unskilled work.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The ALJ's mental RFC determination was further supported by school records and Plaintiff's testimony. The ALJ noted that statements from Plaintiff's teachers suggested that Plaintiff was able to work in some capacity, but may lack motivation. (T. 21.) Plaintiff's teacher reported that he was not always eager to do work, but he was cooperative and would do what he knew was expected of him. (T. 345.) His teacher stated that in the "right setting" Plaintiff could be successful. (*Id.*) The ALJ also noted that Plaintiff was able to obtain a taxi license, do simple math involving money, prepare food, shop in stores, pay bills, count change, and drive. (T. 21.) Therefore, evidence

provided by Plaintiff's teachers and Plaintiff's own testimony of his activities support the ALJ's mental RFC determination and further indicate that Plaintiff was capable of learning new tasks.

Plaintiff then contends that Dr. Long's conclusion, that Plaintiff had moderate to marked limitations, was too vague to support an RFC determination.  (Dkt. No. 10 at 8 [Pl.'s Mem. of Law].)  Plaintiff first admonishes the ALJ for failure to include specific limitations and then argues those limitations would not constitute substantial evidence even if the ALJ had included them.  For the reasons discussed herein, the ALJ's mental RFC was supported by substantial evidence, namely, the medical opinions of Drs. Long and Kamin, statements by Plaintiff's teachers, and Plaintiff's own testimony.

Plaintiff next argues that the ALJ failed to properly account for Plaintiff's cognitive limitations in his RFC determination.  (Dkt. No. 10 at 9-12 [Pl.'s Mem. of Law].)  In support of his argument, Plaintiff specifically argues the ALJ improperly substituted his judgment for medical opinion by calling into question the veracity of Plaintiff's testing results and the ALJ failed to include testing limitations in his RFC determination.  (*Id.* at 11-12.)

First, the ALJ did not improperly substitute his own lay opinion.  To be sure, an ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Here, although the ALJ noted that Plaintiff's testing scores "varied significantly, calling into question the veracity of these test results" the ALJ nonetheless determined that Plaintiff suffered from an intellectual impairment and

assessed that impairment throughout his determination based, not only on testing results, but on medical opinion evidence and Plaintiff's testimony.

It is well within an ALJ's discretion to weigh the validity of multiple testing results. Here, the ALJ concluded that although Plaintiff has an intellectual disability, "his performance on standardized tests have varied significantly, calling into question the veracity of these test results." (T. 20.) An ALJ may reject an IQ score as invalid when it is inconsistent with the record. *See Burnette v. Colvin,* 564 F. App'x 605, 608 (2d Cir. 2014) (ALJ properly exercised his discretion in affording little weight to an IQ score which was inconsistent with the record); *see Baszto v. Atrue*, 700 F.Supp.2d 242, 248 (N.D.N.Y. 2010) (collecting cases). The ALJ took into consideration Plaintiff's tests scores at steps three and four of his determination. In formulating his RFC, the ALJ determined that based on the record as a whole, including Plaintiff's test scores, medical evidence, and testimony, that Plaintiff retained the mental RFC to perform unskilled work. (T. 20-21, 23-24.)

Second, Plaintiff essentially asks the Court to reweigh the evidence before the ALJ. Plaintiff provided a summary of various test results which he contends the ALJ failed to properly take into account. (Dkt. No. 10 at 11-12 [Pl.'s Mem. of Law].) When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court "will not reweigh the evidence presented at the administrative hearing, ... nor will it determine whether [the applicant] actually was disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it." *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (citing *White v. Shalala,* 823 F.Supp. 621, 623 (N.D.Ind.1993)). Because substantial

evidence supported the ALJ's mental RFC determination, for the reasons stated herein, it is recommended that the RFC determination be upheld.

### C.    The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in his step five determination because he failed to call on the services of a VE.  (Dkt. No. 10 at 16-18 [Pl.'s Mem. of Law].)

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work."  *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Here, the ALJ cited to SSR 85-15, which provides that the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to carry out and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. (T. 25.) The ALJ's mental RFC determination is consistent with the demands of unskilled work. Therefore, the ALJ did not err in reliance on the Grids in his step five determination because Plaintiff's mental impairments did not prevent him from performing the basic demands of unskilled work. It is therefore recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      November 18, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge